*160 OPINION.
Smith :
With the invested capital question contained in the second assignment of error settled by stipulation, the only remaining issue on the merits is that of the salary deductions for the years 1918 and 1919. The respondent contends that the salary deductions taken in *161 the petitioners’ returns for those years and now claimed as an expense deduction are unreasonably large an'd represent a distribution of dividends in the guise of compensation for services rendered. It same was duly authorized by the petitioners’ directors.
We do not believe that the facts which we have set out above at considerable length bear out the respondent’s contention. It is true that the amounts of additional compensation paid to the officers in both the years 1918 and 1919 bear a somewhat close relationship to their stock holdings, but this fact alone does not establish that such amounts were paid as a distribution of profits rather than as compensation for services. Woodcliff Silk Mills, 1 B. T. A. 715; E. J. Stilwell Paper Co., 6 B. T. A. 531. Wherever it appears that compensation has been paid by a corporation to its stockholders in the proportion of their stock holdings it is incumbent on the taxpayer satisfactorily to show that the compensation was in payment for is not questioned that the compensation in dispute was actually paid to the officers during the taxable years and that the payment of the personal services actually rendered and was reasonable in amount. New York Theatre Program Corporation, 4 B. T. A. 431. The fact that the compensation is large in amount is no bar to the deduction of the amount as an ordinary and necessary expense provided that it is paid in pursuance of an agreement to pay the compensation, is for personal services actually rendered, and constituted only reasonable compensation for such services. H. V. Greene Co., 5 B. T. A. 442. In that case the Board allowed the deduction from gross income of compensation paid to Greene in 1919 of $235,138.75.
The evidence before us leaves no doubt that the amounts paid to the officers for both the years 1918 and 1919 in the form of fixed salaries and bonuses Avere in payment for personal services actually rendered. Each of the officers devoted all of his time to the business and apparently rendered highly efficient and valuable services. Other than the relationship of the compensation to stock holdings there is nothing in the record to indicate that any of the payments made to the officer-stockholders as compensation were in fact a return on their capital investments.
The question of the reasonableness of the salaries must be determined with reference to the volume of business, the profits made, the character of the services for which the compensation was paid and all other pertinent facts shown.
The petitioners’ combined gross sales for 1918 were $3,267,944.11 and for 1919, $4,302,521.04. Their net profits were $159,036.67 for 1918 and $229,363.69 for 1919. The total administrative salaries, bonuses, commissions and salesmen’s salaries and expenses amounted to $190,438.11 in 1918 and $219,473.24 in 1919, or approximately 5 *162 per cent of gross sales for each year. Considering the comparatively small amount of capital 'employed in the business and the fact that its earnings depended almost entirely upon the personal efforts of its officers and employees, we find no disproportion between salaries and gross business or net profits.
The evidence in the case is convincing that the officers were all men of ability and possessed qualifications for their respective duties and that they rendered services to the petitioners commensurate in value with their compensation. The evidence is specially convincing in regard ,to A. D. Geissler, who received considerably larger compensation than any of the other officers. A former officer of the Victor Talking Machine Co., who was treasurer of that company during the years 1918, 1919, and 1920, testified that A. D. Geissler was really the outstanding man in the jobbing business, in introducing salesmanship methods or in building up the companies’ business and that he gave other jobbers objectives to obtain. “ He was what we then called the wheel horse of the jobbing field. When New York did not show the results that we thought it ought to show we thought we ought to have him there and Geissler’s activities were divided between New York and Chicago.” It was testified .that if A. D. Geissler and his associates had not been permitted to acquire the shares of stock of the Chicago and New York companies the Victor Company would have increased his compensation to somewhere between $50,000 and $100,000 per year. The testimony of officers of the Victor Talking Machine Co. is convincing that the amounts received by Geissler during the years 1918 and 1919 as compensation for personal services rendered ,to the two petitioners was only reasonable compensation for services rendered the companies by him. It was also testified that large salaries were paid by the Victor Talking Machine Co. to their own salesman and that total compensation to important officers and salesman was regularly in the form of salaries plus a bonus or commissions. The general manager of the Victor Talking Machine Co. for the year 1916 received as compensation for his services for that year $45,000 plus commissions of $83,858.39, making a total compensation for the year of $128,858.39. By reason of the ability of Geissler and his associates the business of the two petitioners had been built up to a point where they were taking about 20 per cent of the product of the Victor Company.
Creed and Keith were both experienced men in the business. Creed had been with the Chicago company since 1902 and Keith since 1907. They had served as comanagers of the Chicago company since 1913. In 1919 Creed was offered the position of general sales man *163 ager for the Victor Company at a fixed salary of $25,000 a year and a bonus that would probably have amounted to an equal amount.
It should be noted too that during the period here under consideration there was a general increase in salaries in practically all lines of business, due in part to the stimulation of war-time trade and the decreased purchasing power of the dollar. It was not an uncommon custom for corporations during those years to pay compensation to their officei’s and emploj'-ees upon the basis of a percentage of net earnings. According to the. testimony of reliable and competent witnesses the compensation paid by the petitioners to their officers and employees compared favorably with that paid by other corporations similarly engaged and was reasonable in amount.
We are of the opinion that the amounts in controversy are within the deductions authorized by section 234(a) (1) of the Revenue Act of 1918.
In regard to the jurisdictional question raised by counsel for the petitioners at the hearing of this proceeding, it appears that the respondent on January 4, 1926, mailed a deficiency notice to the New York Talking Machine Co. in respect of its tax liability for both the years 1918 and 1919. The compensation shown therein was made upon the consolidated returns for those years filed by the New York Talking Machine Co. and the Chicago Talking Machine Co. This deficiency letter does not propose any additional assessment or state that any additional tax liability exists against the Chicago Talking Machine Co. for the taxable years. No copy of such notice or other notice of any deficiency for either of the years 1918 or 1919 was ever mailed to the Chicago Talking Machine Co. Under such circumstances the Chicago Talking Machine Co. was without right of appeal to the Board. Caughey-Jossman Co., 8 B. T. A. 201; American Creosoting Co., et al., 12 B. T. A. 247. An order will issue dismissing the proceeding in so far as it relates to the Chicago Talking Machine Co.
Since there is no showing that the New York company and the Chicago company ever entered into any agreement authorizing the assessment and collection of the taxes found to be due upon their consolidated returns or consented in any way to the assessment and collection of such taxes upon any basis other than that prescribed in section 240(a) of the Revenue Act of 1918, the New York Talking-Machine Co. is liable only for so much of the above-stated deficiencies for 1918 and 1919 computed in accordance with the decision herein as may be determined upon the basis of the net income properly assignable to it. American Creosoting Co., et al., supra.
Reviewed by the Board.

Judgment will he entered under Bule 50.