Kay, Inc. v. Commissioner.
Kay, Inc. v. Commissioner
Docket No. 16437.
United States Tax Court
1949 Tax Ct. Memo LEXIS 54; 8 T.C.M. (CCH) 911; T.C.M. (RIA) 49246; October 10, 1949
*54 Upon the facts, held, (1) respondent improperly disallowed part of the compensation petitioner paid two of its officers during fiscal years 1944, 1945 and 1946; (2) bonuses of the two officers in the fiscal year 1944 constituted additional compensation; (3) the full amount of the bonus accrued by petitioner to one of its officers in the fiscal year 1944 was deductible in the absence of proof that part of it came within the terms of section 24 (c) of the Internal Revenue Code; (4) petitioner is entitled to a net operating loss carry-back from the fiscal year 1946 to the fiscal year 1944. Ira J. Meyer, Esq., 116 John St., New York, N. Y., for the petitioner. Stephen P. Cadden, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioner's income tax for fiscal years ended October 31, 1944, 1945 and 1946 in the amounts of $585.92, $5,371.45 and $1,202.79, respectively. Except for disallowance of a deduction for New York franchise taxes in the amount of $343.17 in the fiscal year 1945, these deficiencies resulted from partial disallowance of deductions claimed for compensation of petitioner's officers. Petitioner denies liability for the deficiencies determined in each year, except for approximately $99.52 in the fiscal year 1945 arising out of the Commissioner's disallowance of the deduction claimed for New York franchise taxes. Furthermore, petitioner claims an overpayment of $1,041.26 for the fiscal year 1944, based on a net operating loss carry-back of $3,757.37 from the fiscal year *56 1946. In an amended answer respondent proposes a further deficiency in petitioner's income tax for the fiscal year 1944 in the amount of $7,556.08, and, in the alternative, a further deficiency for that year based upon the provisions of section 24(c) of the Code. There are four questions involved in this case: (a) Were the amounts deducted as compensation for petitioner's president and vice-president in the fiscal years 1944, 1945 and 1946 excessive to the extent of not exceeding $2,020.41, $11,788.26 and $9,261.65, respectively? (b) Did the $9,000 and the $6,000 bonuses of petitioner's president and vice-president in the fiscal year 1944 constitute additional compensation or did they represent distributions of profits? (c) If the bonuses were additional compensation, was petitioner precluded by section 24 (c) of the Code from deducting $2,700 of the $9,000 bonus of its president in the fiscal year 1944 because this amount was not paid him until more than two and one-half months after the close of petitioner's taxable year? (d) Was petitioner entitled to a net operating loss carry-back from the fiscal year 1946 to the fiscal year 1944 under section 122 of the Code. Findings *57 of Fact Petitioner is a corporation organized under the laws of the State of New York in 1930, and maintaining its principal office at 9 East 40th Street, New York, New York. It files its returns on the accrual and fiscal year basis ending October 31. For the fiscal years 1944, 1945 and 1946 it filed its returns with the collector of internal revenue for the third district of New York. At all times petitioner has been in the business of creating, designing and selling display materials for the use of national advertisers in point-of-sale advertising at retail outlets. As a part of its services it has acted as a design counsel with respect to permanent and semi-permanent, three-dimensional advertising displays for store fronts, merchandise vending devices, truck body exteriors and packaging. Each display was individually designed to fit the need of a particular client. During the war years it designed, developed and supervised the production of three-dimensional training aids for the military services. After creating and designing display advertising units, petitioner has always farmed out the production of these items to various manufacturers and then sold the finished products *58 to advertisers. It never has had manufacturing facilities itself and carried no stock of merchandise. Competitors in the advertising display business differed from petitioner in that they were basically a manufacturing organization, whereas petitioner was primarily a creative and sales organization. Petitioner employed an average of twelve persons, of whom five were technicians and draftsmen, seven were office girls, bookkeepers and stenographers. All were under the supervision of its senior officers, Max Kallenberg and Frank Springer-Miller (hereinafter referred to as Kallenberg and Miller). Kallenberg, the founder of petitioner, is recognized as an expert in point-of-sale advertising due to years of experience in this field. His articles on this subject have frequently appeared in trade journals. He has been president, a director and a stockholder of petitioner at all times since its formation and the dominant figure in the life of the corporation. Not only did he take charge of its administration, but he secured all petitioner's clients, developed the basic advertising program for each customer, acted as liaison between the client and petitioner's art department during the development *59 of the project, handled the presentation of developed designs in all important cases and supervised the factory production of the advertising display units. His duties and services remained the same at all times through the fiscal year 1946. Among the leading national advertisers whose accounts he consistently handled were H. J. Heinz Company, Coca Cola Company, National Dairy Products, Joseph Schlitz Brewing Company, Hiram Walker, Inc., Liebmann Breweries, Inc., Pabst Sales Company, F. M. Schaeffer Brewing Company, McKesson & Robbins and Beatrice Food Products. Petitioner received over half a million dollars' worth of business from Coca Cola Company on one occasion and a similar amount from Beatrice Food Products on another. Miller was first employed by petitioner as a free-lance artist but in 1934 he was made vice-president and a director of the corporation. In the years thereafter he acted as Kallenberg's executive assistant in all matters, took charge of the design department and in particular serviced the Coca Cola Company's account by carrying out the retail display program outlined by Kallenberg. At all times after its incorporation, petitioner had 100 shares of common stock *60 outstanding. At first all the stock was owned by Kallenberg. In March 1939 by virtue of an employment contract between petitioner, Kallenberg and Miller, Kallenberg transferred 33 1/3 of his shares of petitioner's stock to Miller in consideration of Miller's past services to petitioner and his agreement to continue to perform his duties with the corporation until October 31, 1943. During the period of the fiscal year 1935 through the fiscal year 1947 petitioner's net sales, gross income, book net income before deduction of Kallenberg's and Miller's compensation, the compensation paid to Kallenberg and Miller, and dividends, were as follows: Book Net
Income
Fiscal
Before
Year
Senior
Compensation Paid
Dividends
Ended
Net
Gross
Officers'
to Senior Officers
Paid or
October 31
Sales
Income
Compensa-
Kallenberg
Miller
Credited
tion
1935
$ 318,946.27
$89,308.59
$ 23,823.86
$13,000.00
$ 7,000.00
1936
320,247.86
107,890.27
47,428.48
18,410.00
11,800.00
$ 8,000.00
1937
362,842.98
116,652.44
62,194.31
25,400.00
17,100.00
14,500.00
1938
659,470.29
145,383.63
82,387.17
37,500.00
25,326.47
8,000.00
1939
470,511.20
107,411.70
40,795.39
30,947.14
18,430.35
5,000.00
1940
599,924.68
133,824.48
61,507.75
35,202.10
17,601.05
1941
1,160,264.36
245,077.99
160,335.18
66,666.67
33,333.33
47,000.00
1942
678,942.90
163,731.17
93,506.87
51,600.00
25,800.00
15,000.00
1943
525,312.47
125,648.87
49,124.70
25,800.00
12,900.00
10,000.00
1944
565,129.17
150,877.65
79,954.94
36,000.00
22,533.33
15,000.00
1945
404,884.08
143,700.41
72,462.93
31,360.00
20,906.67
15,000.00
1946
484,264.08
163,375.23
48,511.91
31,320.00
20,960.00
1947
1,273,764.78
275,280.72
176,416.87
46,771.35
41,415.35
25,000.00
*61 Note: Compensation of Kallenberg and Miller is stated as settled with respondent in the fiscal years 1936, 1937, 1938, 1941 and 1942. Over the fiscal years from 1935 through 1941 petitioner first experienced a rising degree of prosperity climaxed in the fiscal year 1941, but in the fiscal year 1942 petitioner's income began to decline due to the commencement of war and in the fiscal year 1943 business was sharply curtailed by a shortage of critical materials. In the latter year petitioner had to turn to war contract work for the Federal government to keep itself in operation. The amount of compensation paid to Kallenberg and Miller during these nine years followed a similar pattern. From a small total figure of $20,000 in the fiscal year 1935 it reached a peak of $100,000 in the fiscal year ending October 31, 1941, and then declined to a total of $38,700 in the fiscal year 1943. Bonuses for the services of these senior officers were a frequent practice in these years. In both fiscal years 1941 and 1942 respondent determined a deficiency in petitioner's income tax. For the fiscal year 1941 the compensation of Kallenberg totaled $74,000 including a bonus of $18,000, and Miller's *62 compensation was $37,000 including a $9,000 bonus. Under a settlement by stipulation between petitioner and the Commissioner $11,000 of the total deduction claimed for their compensation was disallowed and the compensation of Kallenberg and Miller was revised to $66,666.67 and $33,333.33, respectively. For the fiscal year 1942 a settlement by stipulation was reached between the Commissioner and petitioner whereby compensation of $51,600 paid to Kallenberg including a $10,000 bonus and compensation of $25,800 paid to Miller including a $5,000 bonus were left undiminished. In the fiscal year 1944 there was considerable improvement in petitioner's financial condition over the prior fiscal year and prospects of satisfactory production improved. Petitioner's net sales for the year were $565,129.17, its gross income was $150,877.65 and its book net income before compensation paid to Kallenberg and Miller was $79,954.94. On September 7 of this year Miller purchased from petitioner for $1,000 6 2/3 shares of petitioner's stock which Kallenberg had previously donated to the treasury. This brought Miller's total holdings in petitioner's stock to 40 shares. On September 7, 1944, petitioner, *63 Kallenberg and Miller also entered into a new employment contract which stated in part: "WHEREAS, KALLENBERG as President of the Corporation, received, a salary of $41,600 for the fiscal year ending October 31, 1942, payable $800 per week, and MILLER received a salary of $20,800 as Vice-President of the Corporation for the fiscal year ending October 31, 1942, $400payable per week, and "WHEREAS, due to the war the Corporation, since October 31, 1942, has reduced substantially its operations, and "WHEREAS, because of such reduction of operations which is believed to be temporary, the weekly salaries of KALLENBERG and MILLER payable by the Corporation, have been reduced at their suggestion and request, to $400 and $200 per week, respectively, and "WHEREAS, such reductions have made with the expectation that the aggregate amount of the salaries payable to said individuals will be restored to what they formerly were, when, as and if the company's operations increase and permit payment thereof, and * * *
"NOW, THEREFORE, for good and valuable consideration, it is agreed as follows: * * *
"FOURTH: In consideration of the terms, covenants and conditions on MILLER'S part *64 to be performed, the corporation agrees to pay MILLER a salary of $400 per week for the period commencing April 1, 1944 and ending October 31, 1944. The Corporation agrees to pay KALLENBERG for services to be rendered a salary of $600 per week for the period commencing April 1, 1944 and ending October 31, 1944. "FIFTH: In consideration of the promises, covenants and conditions on MILLER'S part to be performed, the Corporation further agrees to pay MILLER a salary for each of the fiscal years commencing November 1, 1944 and ending October 31, 1949, the amount of which salary shall be fixed at a Special Meeting of the Board of Directors to be held in December, of each year, beginning with December, 1944. The corporation agrees to pay KALLENBERG for services to be rendered a salary for each of the fiscal years commencing November 1, 1944 and ending October 31, 1949, the amount of which salary shall be fixed at a Special Meeting of the Board of Directors to be held in December of each year, beginning with December, 1944. The salaries so fixed for MILLER and KALLENBERG may be subsequently adjusted in the discretion of the directors, and the directors may from time to time declare bonuses *65 payable to employees of the Corporation. It is specifically agreed, however, that the Corporation will pay, in any event, a basic minimum salary of not less than $15,600 per annum to KALLENBERG, and not less than $10,400 per annum to MILLER." * * *
As a result of this employment contract Kallenberg received a basic salary of $27,000 and Miller received a basic salary of $16,533.33 in the fiscal year 1944. A joint special meeting of the board of directors and stockholders of petitioner was held on September 7, 1944. The directors present were Kallenberg, Miller and Ira J. Meyer. The stockholders present were Kallenberg, owning 60 shares, and Miller, owning 40 shares. By unanimous vote a dividend of $150 per share was declared, payable on September 12, 1944. Kallenberg then proposed that a bonus be paid the two senior officers and his suggestion was unanimously adopted in a resolution which reads in part as follows: "RESOLVED that a bonus of $9,000.00 be paid to MAX KALLENBERG, President, as additional compensation for his valuable services rendered and to be rendered during the current fiscal year ending October 31, 1944, and that a bonus of $6,000.00 be paid to FRANK SPRINGER-MILLER, *66 Vice-President, as additional compensation for his valuable services rendered and to be rendered during the current fiscal year ending October 31, 1944." These bonuses constituted additional compensation and were in part to compensate Kallenberg and Miller for reductions in their salaries sustained in the fiscal year 1943. Petitioner actually paid Kallenberg his $9,000 bonus in three separate installments of $5,400 on September 12, 1944, $900 on December 19, 1944 and $2,700 on November 19, 1945. In the fiscal year 1945 postwar shortages of material lowered petitioner's production and resulted in lower profits than in the previous year. Petitioner's net sales were $404,884.08, its gross income was $143,700.41 and the book net income before compensation paid to Kallenberg and Miller was $72,462.93. During this year Kallenberg was paid a basic salary of $31,360 and Miller received a basic salary of $20,906.67. Though no bonuses were paid, a dividend of $15,000 was declared. In the fiscal year 1946 full production by petitioner continued to be hampered by a shortage of materials so that at the close of the year there remained on hand unfilled orders for advertising display units *67 in the amount of approximately $665,000. While both petitioner's net sales of $484,264.08 and its gross income of $163,375.23 showed an advance over the fiscal year 1945, yet its book net income before compensation of officers fell sharply to $48,511.91. In this year petitioner paid salaries of $31,320 and $20,960 to Kallenberg and Miller, and also a salary of $6,268 to its secretary, Neal Goldman. No bonuses or dividends were declared. On its tax returns for the fiscal years 1944, 1945 and 1946 petitioner claimed deductions of $58,533.33, $52,266.67 and $58,548, respectively, as total compensation paid its officers. In his notice of deficiencies respondent stated in part: "Taxable Year Ended October 31, 1944 EXPLANATION OF ADJUSTMENT (a) Of the deduction claimed for Compensation of officers in the amount of $58,533.33, the sum of $2,020.41 is deemed unreasonable and excessive under the provisions of section 23 (a) of the Internal Revenue Code. * * *
Taxable Year Ended October 31, 1945 EXPLANATION OF ADJUSTMENTS (a) Of the deduction claimed for Compensation of officers in the amount of $52,266.67, the sum of $11,788.26 is deemed unreasonable and *68 excessive under the provisions of section 23 (a) of the Internal Revenue Code. Taxable Year Ended October 31, 1946 EXPLANATION OF ADJUSTMENT (a) Of the deduction claimed for Compensation of Officers in the amount of $58,548.00, the sum of $9,261.65 is deemed unreasonable and excessive under the provisions of section 23 (a) of the Internal Revenue Code." The compensation of both Kallenberg and Miller was reasonable in the fiscal years 1944, 1945 and 1946. Opinion HILL, Judge: In the fiscal years 1944, 1945 and 1946 petitioner claimed as deductions for compensation of its officers $58,533.33, $52,266.67 and $58,548, respectively. Three questions involving the correctness of these deductions must be determined. First, we must decide whether respondent was correct in disallowing them in the amount of $2,020.41 for the fiscal year 1944, $11,788.26 for the fiscal year 1945, and $9,261.65 for the fiscal year 1946 on the ground that to this extent the compensation was excessive and unreasonable. Except for $6,268 paid petitioner's secretary, Neal Goldman, in the fiscal year 1946 which was not in dispute, the compensation partially disallowed *69 each year was that paid to petitioner's president, Kallenberg, and its vice-president, Miller. Secondly, we must determine whether bonuses of $9,000 for Kallenberg and $6,000 for Miller, which were deducted as part of their compensation for the fiscal year 1944, constituted distribution of profits or additional compensation. The third question arises out of respondent's contention that if it is determined the bonuses for Kallenberg and Miller in the fiscal year 1944 represented additional compensation, then in the alternative, due to section 24 (c) of the Code, $2,700 of the bonus for Kallenberg was not deductible in the fiscal year 1944 because it was not paid before two and one-half months after the close of that year. A fourth question presented for our consideration is whether petitioner was entitled to a net operating loss carry-back from the fiscal year 1946 to the fiscal year 1944. Turning to the first question, we are aware that reasonableness of compensation is a question of fact to be determined in the light of the particular circumstances of each case. William S. Gray & Co. v. United States, 35 Fed. (2d) 968, 973, and Miller Mfg. Co., Inc. v. Commissioner, 149 Fed. (2d) 421, 423. *70 The size and type of petitioner's business, as well as the qualifications of Kallenberg and Miller and the scope of their duties are relevant factors in determining the reasonableness of their compensation in these three years. At all times from its formation to the end of the fiscal year 1946 petitioner was a small personal service type of corporation in whose operation capital was not a material factor. Its business of creating, designing and selling display units to fit the individual needs of national advertisers at retail outlets was unique and highly specialized in nature. Such a business venture was inherently risky and petitioner's earnings were subject to constant fluctuation. Its financial success has always depended on the ingenuity, skill and personality of its executive officers, Kallenberg and Miller. The former founded the company, has been its president since its formation, and has always been the dominant figure in every phase of its operation. As a recognized expert in the field of point of sale advertising he was responsible for all the business petitioner acquired. Miller was made a vice-president of petitioner in 1934 and since that time has been Kallenberg's *71 trusted assistant in design, sales, supervision of production and administration. The earnings of petitioner in the taxable years in question and at all times prior thereto resulted primarily and almost wholly from the efforts of these two men, rather than from capital or the work of subordinate employees. In view of all these facts we are convinced that the compensation paid Kallenberg and Miller in the fiscal years 1944, 1945 and 1946 was reasonable. The greatly improved financial position of petitioner in the fiscal year 1944 plus the objective stated in the employment contract of that year to make up for the 50 per cent slash in salary the previous year justify the $36,000 paid to Kallenberg and the $22,533.33 paid Miller, including the bonuses of $9,000 and $6,000 to them respectively. When petitioner's business slumped somewhat in the fiscal year 1945, the salaries of Kallenberg and Miller were proportionately reduced to $31,360 and $20,906.67, respectively. In the fiscal year 1946 their compensation remained approximately the same as in the prior year despite the fact that petitioner's book net income before compensation of officers dropped sharply. This decline does not indicate *72 that the services of Kallenberg and Miller were less valuable either in quantity or quality than those rendered in prior years. Actually, petitioner's net sales and gross income for the fiscal year 1946 reflected a marked increase over the prior year and on October 31, 1946 there were unfilled orders on hand in the amount of approximately $665,000 procured by these officers which only failed to constitute completed sales because of a shortage of materials. The greatly increased amount of the net sales and net income of petitioner in the fiscal year 1947 indicates that it reaped a large benefit in that year from the unfilled orders of the previous year. These facts vindicate the salaries of $31,320 and $20,960 paid Kallenberg and Miller in the fiscal year 1946. Furthermore, the 60-40 ratio of Kallenberg's compensation to that of Miller in the fiscal years 1944, 1945 and 1946 was in line with their respective abilities and responsibilities. Respondent stresses the fact petitioner made no attempt to compare the compensation paid Kallenberg and Miller with that received by individuals serving in the same capacity with similar companies. While this type of evidence is relevant in considering *73 the reasonableness of compensation in a given case, such an inquiry is only proper where there exists a comparable job entailing comparable services. In the instant case both the duties and services of Kallenberg and Miller and the operation of petitioner were unique. The indicated comparison suggested by respondent appears not to have been available. Turning to the second question, respondent alleges as the ground for an additional deficiency in the fiscal year 1944 that bonuses of $9,000 for Kallenberg and $6,000 for Miller, which formed a part of the amount deducted as their compensation for the fiscal year 1944, constituted distribution of profits rather than additional compensation. He has the burden of proof on this issue since it was raised by an affirmative allegation made in an amended answer to the petition. Whether a bonus is additional compensation or a disguised dividend is a question of fact to be decided on the basis of all the circumstances. On the basis of the evidence we have found and held that compensation paid Kallenberg and Miller for the fiscal year 1944, including the bonuses in question, was reasonable. We therefore hold that such bonuses were compensation *74 and not a distribution of profits. It is true as respondent emphasizes that these bonuses were in a 60-40 ratio in exact proportion to the stockholdings of Kallenberg and Miller at the time they were voted, a significant indication that they were distributions of profits. Yet this fact is not conclusive in itself. See New York Talking Machine Co., 13 B.T.A. 154, and C. S. Ferry & Son, Inc., 18 B.T.A. 1261. Two other facts also support respondent's contention. Kallenberg, the chief beneficiary of the bonus, actually proposed it at the special joint meeting of petitioner's directors and stockholders on September 7, 1944, and Kallenberg and Miller, the sole recipients of the bonus, formed a majority of those voting its approval. Yet the greater weight of evidence supports petitioner's view that the bonuses were additional compensation. The bonus resolution of petitioner on September 7, 1944, plainly states that the bonuses were for additional services rendered and to be rendered in the fiscal year 1944 by Kallenberg and Miller. Furthermore, Kallenberg's testimony was uncontradicted that these bonuses were a restorative measure to compensate in part for the *75 reduction in salary sustained by Kallenberg and Miller in the fiscal year 1943 when salaries were slashed. Even the employment contract between petitioner, Kallenberg and Miller in 1944 provided for possible bonus payments in addition to salaries. More important, petitioner paid a $15,000 dividend in the very year when respondent claims the bonuses were disguised dividends. The third question in this case arises out of respondent's contention that if it is decided the bonuses of Kallenberg and Miller in the fiscal year 1944 were additional compensation, then it is still entitled to an additional deficiency for that year on the ground that due to section 24 (c) of the Code $2,700 of Kallenberg's bonus was not deductible by petitioner in the fiscal year 1944. This contention is based on the fact that the $2,700 was not actually paid to Kallenberg until November 19, 1945, more than two and one-half months after the close of petitioner's fiscal year. Since respondent raised this issue by affirmative allegation in an amended answer to the petition, he has the burden of proof. We must hold against him on this issue for failure to prove one of the essential facts prerequisite to invoking *76 section 24 (c). That statute states that no deduction shall be allowed relating to expenses incurred if, among other things, by reason of the accounting of the person to whom payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends. There is absolutely no evidence in this case whether Kallenberg to whom payment of the $2,700 was to be made, was on the cash basis or the accrual basis of reporting income. Only in the event he was on the cash basis would the $2,700 not be includible in his gross income for the year 1944, and thus would this requirement of section 24 (c) be met. Therefore, we hold petitioner is entitled to deduct the $2,700 as an expense in the fiscal year 1944. Inclusion of the full amount of the salaries which petitioner paid Kallenberg and Miller during the fiscal year 1946 in its deduction from income for that year results in a net loss to petitioner. We hold that under the provisions of section 122 of the Code the entire amount of such loss constitutes a net operating loss for the fiscal year 1946 which petitioner is entitled to carry *77 back to the fiscal year 1944 and deduct in full as a net operating loss deduction. Decision will be entered under Rule 50.